205 So.2d 634 (1967)
Robert Wayne BEAUREGARD, Plaintiff-Appellant,
v.
Virgil L. SALMON et al., Defendants-Appellants-Appellees.
No. 10797.
Court of Appeal of Louisiana, Second Circuit.
May 29, 1967.
On Rehearing November 28, 1967.
*636 Lewis Weinstein, Shreveport, for plaintiff-appellant.
Cook, Clark, Egan, Yancey & King, Shreveport, for Grain Dealers Mut. Ins. Co., third-party plaintiff and defendant, appellant-appellee.
Lynch & Rogers, Shreveport, Nelson & Nelson, New Orleans, for Fidelity General Ins. Co., third-party defendant-appellee.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for Virgil L. Salmon, defendant, third-party plaintiff, appellee, and Central Mut. Cas. Co., defendant-appellant.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action in tort wherein plaintiff, Robert Wayne Beauregard, individually and on behalf of his wife and four minor children, seeks to recover property damage and damages for personal injuries arising out of a motor vehicle collision.
The collision occurred on U. S. Highway 80 about 5:30 p. m. June 23, 1963, between a Comet automobile owned and driven at the time by plaintiff and a Chevrolet station wagon owned by Western Auto Leasing Company, under lease to Dr. A. W. Stickle, and at the time driven by Barry Kit Salmon with the lessee's permission.
Made defendant in addition to Western Auto Leasing Company was Virgil L. Salmon, father of the minor, Barry Kit Salmon. The action against the former was dismissed for lack of jurisdiction. Salmon caused to be made a third-party defendant Grain Dealers Mutual Insurance Company, insurer of Salmon's motor vehicles, whose coverage extended to nonowned automobiles when operated with the owner's permission by Salmon or members of his family. Salmon sought judgment over against his insurer for any sum which he might be condemned to pay. In addition, he sought to recover damages in the nature of attorneys' fees and expenses incurred in the defense of the action against him by reason of the refusal of his insurer to *637 defend him. Alleging that Salmon's policy provided only excess insurance coverage on nonowned automobiles, Grain Dealers caused Fidelity General Insurance Company, an insurer of the station wagon, to be made a third-party defendant.
After trial, there was judgment in favor of plaintiff, Robert Wayne Beauregard, in his individual capacity, against Virgil L. Salmon, Grain Dealers Mutual Insurance Company, and Fidelity General Insurance Company, as well as against Central Mutual Casualty Company, in solido, for $467.50. Plaintiff's demands for and on behalf of his wife and minor children were impliedly rejected; demands of the third-party plaintiffs were expressly rejected. From the judgment, plaintiff and all others condemned, except Fidelity General Insurance Company, perfected devolutive appeals.
The claims asserted are limited on the appeals to those made for and on behalf of plaintiff, Robert Wayne Beauregard, in his individual capacity. The demand on behalf of the minors was rejected because of the insufficiency of proof, and on behalf of the wife for the reason that plaintiff was unauthorized to stand in judgment for his wife. Plaintiff does not complain of error in these rulings.
There was no basis upon which a judgment might be predicated against Central Mutual Casualty Company as it was not a party to this action.
The question relative to whose fault caused the accident is a factual issue. U. S. Highway 80, upon which the accident occurred, is a four-lane principal east-and-west thoroughfare traversing north Louisiana. There are two lanes for traffic in each direction. Opposing lanes in the vicinity of the accident are separated by a grass-covered neutral ground. Unfavorable weather conditions generally prevailed; the highway surface was wet and slippery from a rain which continued to fall at the time of the accident.
The vehicles involved were proceeding in a westerly direction. Plaintiff's Comet, occupying the inner westbound traffic lane, was proceeding at approximately 50 m. p. h. Defendant's station wagon, generally occupying the outer, westbound traffic lane, except to pass, was traveling at a speed estimated at 50-60 m. p. h.
The accident occurred near the west end of a segment of the highway about a mile in length, which, due to its surface, was characterized as particularly slippery when wet. An appropriate sign was posted warning motorists of that condition.
Immediately prior to the occurrence, Salmon maneuvered the station wagon from the outer into the inner westbound traffic lane and passed a vehicle to his right. Before attempting to return to the outer lane, he glanced to the rear to ascertain whether sufficient distance intervened between his vehicle and the vehicle just passed to enable him to do so. Upon again directing his attention forward, he saw the brake lights flash on the Beauregard vehicle as Beauregard reduced his speed to conform to that of traffic ahead. Thereupon, Salmon likewise applied his brakes, losing control of the station wagon which spun around twice and perhaps three times, covering altogether a distance of approximately 100 yards. In this maneuver the station wagon struck plaintiff's car and propelled it, by the force of the impact, partially across the neutral ground.
There is no direct testimony that Salmon was exceeding the maximum speed limit of 65 m. p. h., then applicable to four-lane highways (LSA-R.S. 32:61). However, this limitation is conditional under the provisions of LSA-R.S. 32:64, which recite:
"No person shall drive a vehicle on the highway within this state at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for the traffic on, and the surface and width *638 of, the highway, and the condition of the weather, and in no event at a speed in excess of the maximum speeds established by this Chapter or regulation of the department made pursuant thereto."
In view of these statutory rules, the weather conditions prevailing at the time, the wet and slippery highway surface, and Salmon's disregard of the danger signal posted as to the particular segment of the highway involved, the conclusion is inescapable that Salmon's speed was neither reasonable nor prudent under the circumstances prevailing at the time of the accident. For these reasons we are not only unable to point out any error in the conclusion reached by the trial court that Salmon was solely at fault, but are of the opinion that the conclusion is amply supported by the evidence.
Plaintiff's award of damages must be predicated upon the nature, extent, and duration of the injuries sustained. Plaintiff testified he was thrown about in his car by the force of the impact, and that his right knee struck the dashboard or some of the controls located on it. His knee became swollen and painful and would "give way" under weight. Soon after the accident plaintiff was seen by Dr. Robert I. Westbrook, Jr., to whom he gave a history of having been injured in an automobile accident of that date. Upon examination, considerable tenderness, a fluctuant swelling of the knee, and a limitation of weight-bearing to a marked degree were noted as was a limitation of flexion and extension of the knee. Plaintiff was given physical therapy, administered cortisone-like drugs, and advised to limit weight-bearing on the injured limb as much as possible. Though Dr. Westbrook suggested that plaintiff be hospitalized, plaintiff continued with his employment.
Swelling and pain persisting, plaintiff was, however, hospitalized for a period of six days during which, on August 20, 1963, Dr. E. C. Simonton, Jr., an orthopedist, assisted by Dr. Westbrook, carried out surgery on plaintiff's right knee. Among the injuries found were those involving the cartilage in the knee joint, as well as those to the back of the kneecap and to the femur and capsule of the joint.
Plaintiff, upon referral by Dr. Westbrook, was first seen by Dr. Simonton July 31, 1963. At that time an examination revealed tenderness over the anterior lateral surface of the knee at the joint level and slight pain upon application of pressure to the patella. Diagnosis included a tear of the meniscus and possible chondromalacia, that is, damage to the back side of the patella. Surgery, according to Dr. Simonton, revealed roughening and irregularity of the posterior surface of the patella over its medial and posterior margins, and irregularity in the linear cleft of the inner chondral notch of the femur.
Drs. Simonton and Westbrook expressed opinions that plaintiff suffered some permanent effects from the injuries sustained in the accident. Both advised against activities requiring deep knee bending or ladder or stair climbing, and were of the opinion that such activities should be avoided indefinitely. Plaintiff nevertheless engaged in service-station work after the accident and was doing so, with the aid of a helper, at the time of trial.
The consensus of Drs. Simonton and Westbrook is that plaintiff will hereafter experience discomfort and even pain in his knee, particularly during a drop in barometric pressure. Thus it appears reasonable to conclude plaintiff will experience difficulty in the performance of employment requiring manual labor.
Dr. Willis J. Taylor, an orthopedist, called as a witness on behalf of defendant, testified, from an examination of March 15, 1966, that no swelling or pain in the knee nor any significant limitation of movement of plaintiff's knee was noted. Some diminished density was found in the bony structure of the knee, explained as bony *639 atrophy or loss of lime salts attributable either to injury or to lack of use. The doctor expressed the opinion that "the present partial, physical impairment or loss of function of the right leg or lower extremity did not exceed ten percent," and that a possibility existed for additional surgery to remove the patella, in which he suggested the possible existence of a softening of the bony structure.
That plaintiff's injuries resulted from the accident was, in our opinion, adequately established, notwithstanding a contrary impression, gained by Dr. Simonton in noting a history of the accident weeks later, particularly in view of the fact that plaintiff, upon consulting Dr. Westbrook on the date of the accident, related his injuries with regard to the accident in question. There is no proof of any other accident; plaintiff denied there was.
For the injuries sustained, considering their painful and probable permanent effects, we deem an award of $5,000.00 ample.
In addition, plaintiff should recover special damages such as property damage to his automobile and charges incurred as hospital and medical expenses in the treatment of his and his wife's injuries. These, we have concluded, were proved:

Dr. E. C. Simonton, Jr. $ 347.50
Dr. Robert I. Westbrook, Jr. 473.00
Physicians & Surgeons
 Hospital, Inc. 200.87
Unreimbursed damage to
 automobile 50.00
 _________
Total $1,071.37
 =========

There was no demand for reimbursement of charges for ambulance services, and the claim for loss of wages is rejected for insufficient proof. No error in their disallowance has been pointed out.
Appropriate is the question of who should respond in damages to plaintiff for the injuries sustained by him. The father, Virgil L. Salmon, with whom the minor, Barry Kit Salmon, resided, is responsible for the minor's torts. LSA-C.C. Arts. 237 and 2318.
Grain Dealers, defendant Salmon's automobile insurer, whose coverage extended to the Chevrolet station wagon operated by Barry Salmon, and Fidelity General, made a third-party defendant at the instance of Grain Dealers, deny liability on the ground that they are only excess insurers of the station wagon inasmuch as, they contend, there was a primary insurer of that vehicle. A policy of Central Mutual was offered in evidence for the purpose of establishing that that insurer was the primary insurer of the vehicle and that the policies of Grain Dealers and Fidelity General provided only excess insurance coverage over and above that of the purported primary insurer.
Grain Dealers' policy provides, with respect to other insurance, that the coverage afforded by the policy "with respect to a * * * non-owned automobile shall be excess insurance over any other valid and collectible insurance." (Emphasis supplied.) Fidelity General's policy contains language to the effect that the protection it provides is only excess insurance over the limit of $10,000.00 for each person and $20,000.00 for each accident or occurrence. Thus, by its own terms, coverage was not afforded by Fidelity General for the first $10,000.00 claimed by plaintiff as damages.
With reference to liability of Grain Dealers, the burden of establishing the existence of other collectible, primary insurance on the station wagon in support of its affirmative defense was upon that insurer. The proof offered does not, in our opinion, sustain this burden. The policy of Central Mutual merely shows the existence of such a policy. No showing was made, contradictorily with Central Mutual, or, indeed, at all, that the insurance provided under its policy was collectible. Nor was it established that the insurer was authorized to do business in Louisiana. The *640 policy was a Missouri contract, having been issued in that state.
Plaintiff did not seek recovery from Grain Dealers. Therefore, his recovery is limited to defendant Salmon who should, however, have judgment over and against his insurer. But, whatever rights plaintiff and defendant Salmon and the latter's insurer have against Fidelity General and Central Mutual should be reserved.
Lastly for consideration is the question of defendant Salmon's claim for attorneys' fees and expenses incurred by the arbitrary refusal of his insurer to defend him in this action. This insurer's policy provides that "the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; * * *." The defenses urged to this claim are: (1) There was other primary collectible insurance and that, accordingly, Grain Dealers was only an excess insurer, and (2) that the facts do not warrant or justify such an award.
The first of these contentions has already been considered and found without merit. With respect to the second, there is no question that Grain Dealers failed and refused to defend its insured although called upon to do so. It had that obligation irrespective of its separate and distinct obligation, under the provisions of its policy, regarding payment of damages and the merits of its contention that it was an excess insurer, particularly in view of the fact that the amount claimed and sued for greatly exceeded the policy limits of coverage purportedly afforded by a primary insurer.
As heretofore noted, after a plea to the jurisdiction was sustained as to Western Auto Leasing Company of St. Louis, Missouri, Virgil L. Salmon remained the only defendant. Salmon's defense was thereafter continued under pleadings by the legal firms of Goode & Dietz and Lunn, Irion, Switzer, Trichel & Johnson. The record reflects Goode & Dietz did not actively engage in the trial of the case; the defense was conducted by a member of the firm of Lunn, Irion, Switzer, Trichel & Johnson. Irrespective of the arrangements among the attorneys for the conduct of the trial, a perusal of the record discloses that the defendant was the recipient of excellent representation.
There is no showing as to what expenses, if any, Salmon incurred in his defense, but, as to the attorneys' fees, it was stipulated that, should it be found that Grain Dealers had violated its obligations to defendant Salmon and that he was entitled to recover attorneys' fees because of its failure to defend him, the court should fix those fees. For the services rendered to the defendant, we have concluded, on reviewing the record, that a fee of $1,500.00 is reasonable.
It is noted that Fidelity General was condemned in solido with the others cast in the sum of $467.50. Fidelity General neither appealed nor answered plaintiff's appeal. Hence, the judgment as pertains to it is final and may not be altered to its advantage.
Therefore, for the reasons assigned, the judgment appealed is amended and recast, and
Accordingly, it is ordered, adjudged, and decreed there be judgment herein in favor of plaintiff, Robert Wayne Beauregard, against the defendant Virgil L. Salmon for the full sum of $6,071.37, and, of that amount, the Fidelity General Insurance Company is condemned in solido with the defendant for the sum of $467.50, with 5% per annum interest thereon from judicial demand until paid, and for all costs, including the cost of this appeal; and
It is further ordered, adjudged, and decreed the defendant Virgil L. Salmon have and recover judgment over and against the third-party defendant Grain Dealers Mutual *641 Insurance Company for the sum of $6,071.37 together with interest and costs, for which he was condemned, and for the additional sum of $1,500.00 as attorneys' fees; and
It is further ordered, adjudged, and decreed that plaintiff's rights, if any, against Grain Dealers Mutual Insurance Company, Central Mutual Casualty Company, and Fidelity General Insurance Company, and the rights of defendant Salmon and third-party defendant Grain Dealers Mutual Insurance Company, if any, for reimbursement, contribution or otherwise, against Central Mutual Casualty Company and Fidelity General Insurance Company be, and they are hereby, specially reserved; and
It is further ordered, adjudged, and decreed that the judgment appealed, as amended and recast, be, and it is hereby, affirmed.
Amended and affirmed.

On Application for Rehearing
BOLIN, Judge.
Following rendition of our original decree Salmon and his insurer, Grain Dealers Mutual Insurance Company, filed applications for rehearing which was granted only as to Grain Dealers. Rehearing was limited, however, "to the question of the existence of primary collectible insurance. Otherwise, rehearings denied".
Central Mutual Casualty Company was the asserted primary insurer of the offending vehicle being driven by young Salmon. Pending rehearing counsel for Salmon filed a pleading in this court alleging the insolvency of Central Mutual. Attached to the pleading is a purported copy of a letter addressed to counsel for Salmon from the Superintendent of Insurance of the State of Missouri stating the aforesaid company had been placed in receivership on April 27, 1967, and that all policies with the company had been cancelled as of that date. Thus, it is contended Central Mutual Casualty Company is insolvent, being in receivership, and, as a consequence, the primary insurance is uncollectible.
Grain Dealers Mutual Insurance Company contends the letter purporting to show the insolvency of Central Mutual Casualty Company, filed for the first time in this court, should not be considered since it is not a part of the record here on appeal. Alternatively, it is submitted that, should this court consider the evidence, it should hold such evidence insufficient to prove uncollectibility.
The question of whether there is valid and collectible primary insurance "is to be determined not by the conditions and existence of the time of the accident, but by those conditions existing at the time of judgment where the primary insurance policy is rendered uncollectible by reason of the insolvency of the insurer". Gros v. Houston Fire and Casualty Insurance Company, 195 So.2d 674 (La.App. 1st Cir. 1967. Writ Refused).
Since judgment in the present case is not yet final, the case should be remanded to the district court for the introduction of any and all evidence tending to show whether or not the primary insurance of Central Mutual Casualty Company is collectible, after which that court should render such judgment as the law and the evidence justify, not inconsistent with the views herein expressed.
For the reasons assigned the case is remanded to the Honorable First Judicial District Court for the Parish of Caddo, State of Louisiana, for the limited purposes herein expressed. The cost of these proceedings are assessed against Grain Dealers Mutual Insurance Company, all other costs to await final termination of the cause.
Remanded.