Michael J. BOUDREAUX,
Plaintiff–Appellant,

v.

SHANNON MARINE, INC., et
al., Defendants,

Houston General Insurance Co.,
Defendant–Appellee.

No. 88–4618.

United States Court of Appeals,
Fifth Circuit.

June 19, 1989.
Rehearing Denied July 21, 1989.

**512**

James H. Domengeaux, Anthony D. Moroux, Moroux, Domengeaux & Davis, Lafayette, La., for plaintiff-appellant.

Marjorie G. O'Connor, Allen, Gooch, Bourgeois, Breaux, Robinson & Theunissen, Lafayette, La., for defendant-appellee.

Before GEE, SMITH and DUHE, Circuit Judges:

DUHE, Circuit Judge.

This case involves a dispute over whether a Standard Workmen's Compensation and Employers' Liability Policy issued by Houston General Insurance Company ("Houston General") covers injuries sustained by plaintiff-appellant Michael Boudreaux while an employee of Shannon Marine, Inc. ("Shannon"). For the reasons below, we find that the district court erred in holding that as a matter of law, the policy did not cover Boudreaux's claim.

## I. BACKGROUND FACTS AND PRIOR PROCEEDINGS

Boudreaux filed an action against Shannon asserting Jones Act and unseaworthiness claims for work-related injuries. At the time of Boudreaux's injury, Shannon was provided with primary liability insurance by Early American Insurance Company ("Early American") and Houston General. Lloyds of London provided excess liability coverage, pursuant to which it paid monies above the primary insurance limits to Boudreaux in order to secure its release and Shannon's. As part of this settlement, Shannon subrogated Boudreaux to its rights against Houston General. Early American has not paid on Boudreaux's claim due to its insolvency.

Pursuant to the subrogation, Boudreaux brought this action against Houston General to recover the $25,000 available under its policy. On a summary judgment motion by Houston General, the district court ruled that an exclusion in its policy allowed it to escape liability for Boudreaux's claims. Boudreaux appeals.

## II. DISCUSSION AND ANALYSIS

### A.

The Early American policy is a standard P & I policy. The Houston General policy insures against certain maritime risks and is thus maritime insurance within the meaning of *Wilburn Boat v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). "Under *Wilburn Boat,* 'the interpretation of a contract of marine insurance is—in the absence of a specific and controlling federal rule—to be determined by reference to appropriate state law.' " *Transco Exploration Co. v. Pacific Employers Ins. Co.,* 869 F.2d 862, 863 (5th Cir.1989) (quoting *Ingersoll–Rand Financial Corp. v. Employers Ins. of Wausau,* 771 F.2d 910, 912 (5th Cir.1985), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 573 (1986)). There being no controlling federal rule, we apply Louisiana law.

The Houston General Policy is a Standard Workmen's Compensation and Employers' Liability Policy (WC/EL). Coverage B, the employers' liability portion of the policy, provides for $25,000 of liability insurance to Shannon for obligations arising out of injuries sustained by its employees. An endorsement to the policy contains the following exclusionary clause:

4. Such insurance shall not attach with respect to any liability of the insured if there is *in force* for the insured or for his benefit a protection and indemnity or similar policy which would cover any part of such liability except for an "other insurance" clause ... or similar clauses (emphasis added).

A qualifying clause in the endorsement provides that:

This endorsement is subject to all the terms, conditions and exclusions of the policy and of forms and endorsements attached thereto which are not inconsistent herewith.

The main policy contains an "other insurance" clause providing that:

[i]f the insured has other insurance against a loss covered by this policy, the company shall not be liable to the insured hereunder for a greater proportion of such loss than the amount which would have been payable under this policy, had no such other insurance existed, bears to the sum of said amount and the amounts which would have been payable under each other policy applicable to such loss, had each such policy been the only policy so applicable.

This "other insurance" clause is commonly referred to as a "pro rata" clause; it provides for a sharing of responsibility among multiple insurers. 15 W. McKenzie & H. Johnson, *Louisiana Law Treatise, Insurance Law and Practice* § 228 (1986).

Houston General contends that Early American's policy is "in force" despite its insolvency, thus coverage by it is precluded by operation of the exclusionary clause in its policy endorsement. Alternatively, it argues that a determination of whether the Early American policy is "in force" must be made at the date of Boudreaux's injury; since Early American was solvent at the time of injury its policy was "in force."

On his behalf, Boudreaux first contends that the qualifying clause in the Houston General endorsement requires the terms of the main policy control whenever there is a conflict between it and the endorsement. He further argues that the insolvency of Early American prevents its policy from being "in force" for the benefit of Shannon, resulting in coverage of its claim by Houston General. Boudreaux also contends that there is a conflict between what he perceives as the complete escape afforded Houston General by the exclusionary clause found in the endorsement and the pro rata clause in the main policy, and that any ambiguity should be resolved in favor of coverage.

### B.

Initially, we disagree with Boudreaux's contention that the qualifying clause found in the endorsement requires that a conflict between the main policy and the endorsement be decided by looking to the language of the main policy. The qualifying clause states that the "endorsement is subject to all terms ... of the [main policy] that are

not inconsistent herewith." We interpret this clause to require that if the terms of the endorsement are inconsistent with the terms of the main policy, the endorsement is not subject to them. Implicit in this determination is that the terms of the endorsement control in the event of a conflict.

The controlling issue is whether Early American's policy can be considered "in force," despite its insolvency, thus precluding recovery by Shannon under Houston General's policy by operation of the exclusionary clause.

■ A threshold issue raised by Houston General at oral argument concerns whether we look to the date of the accident or the date of judgment as the controlling date for the applicability of the exclusionary clause. Houston General argues that the date of the accident must control, relying on *Backhus v. Transit Casualty Co.*, 532 So.2d 447 (La.App.1988), *cert. granted*, 540 So.2d 322 (La.1989). While the *Backhus* holding supports Houston General's argument, we find it inconsistent with other Louisiana Court of Appeal decisions that have looked to the judgment date as the controlling date when determining coverage questions. *See Gros v. Houston Fire & Casualty Insurance*, 195 So.2d 674, 676–77 (La.App.), *cert. denied*, 250 La. 644, 197 So.2d 898 (La.1967) ("valid and collectible" with regard to the primary insurer is to be determined by the conditions existing at the time of judgment where the primary insurance policy is rendered uncollectible by reason of the insolvency of the insurer); *McGuire v. Davis Truck Services*, 518 So.2d 1171, 1172 (La.App.), *cert. denied*, 526 So.2d 791 (La.1988) (insolvency of primary insurer two years after suit filed creates issue of excess insurer's liability); *Poirrier v. Cajun Insulation, Inc.*, 501 So.2d 800, 809 (La.App.), *cert. denied*, 502 So.2d 579 (La.1987) (case remanded to trial court for purpose of determining whether judgment is "collectible" from the primary insurer at the time the matter is heard by the trial court); *see also* 15 W. McKenzie &

H. Johnson, *Louisiana Law Treatise, Insurance Law and Practice* § 230 (determination as to whether there is valid and collectible insurance is to be determined at the time of judgment, not the time of accident). In light of these decisions, we believe the correct rule in Louisiana is to apply the date of judgment as the controlling date. Furthermore, certiorari has been granted by the Louisiana Supreme Court in *Backhus*, casting doubt on the validity of the Court of Appeal decision.

Turning to the terms of the exclusionary clause found in the endorsement, the only case we are aware of that interprets this exact clause is *Backhus*, in which the court determined that an insurer's insolvency subsequent to the date of an accident did not prevent its policy from being "in force" on the date of the accident. Implicit in its finding is that the solvency of the insurer was the determining factor as to whether the insurance policy was "in force" and could be applied to the claims. For the reasons stated above, however, we are reluctant to rely on *Backhus*.

Further guidance is provided by interpretation of analogous insurance terms by this Court. In *Continental Marble & Granite v. Canal Ins. Co.*, 785 F.2d 1258 (5th Cir. 1986), an excess policy stated "[t]he company shall be liable only ... if the insurance afforded by such underlying insurance is *inapplicable* to the occurrence ... (emphasis added). We found that the primary insurer's insolvency did not render its coverage "inapplicable," thus the excess insurer was not required to "drop down" to provide coverage.[1] *Id.* at 1259.

In *Mission Nat. Ins. Co. v. Duke Transp. Co.*, 792 F.2d 550 (5th Cir.1986), an excess policy contained the following clause:

> The company shall only be liable for ... the excess of either (a) the limits of the underlying insurance ... in respect of each occurrence *covered* by said underly-

---

1. If an excess insurer "drops down," it assumes the primary insurer's responsibility for cover-

age.

ing insurance, or (b) ... loss ... not covered ... (emphasis added).

We found that:

When an excess insurer uses the term "collectable" or "recoverable" it is agreeing to drop down in the event the primary coverage becomes uncollectible or unrecoverable; on the other hand, when an excess insurer uses the term "covered" or "not covered," it is agreeing to drop down only in the event that the terms of the underlying policy do not provide coverage. . . .

*Id.* at 553.

Louisiana Court of Appeal decisions also lend us some guidance. In *McGuire v. Davis Truck Services, Inc.*, 518 So.2d 1171 (La.App.1988), the court determined that the excess policy must "drop down" to cover a claim when the primary insurer was insolvent and the terms of the excess insurance policy only precluded coverage when the primary insurance was "valid and collectable." *See also Beauregard v. Salmon*, 211 So.2d 732 (La.App.), *cert. denied,* 214 So.2d 550 (La.1968) and *Gros v. Houston Fire & Casualty Insurance*, 195 So.2d 674 (excess policy that provides that it "shall be excess over any other valid and collectible insurance" drops down to provide coverage if the primary coverage is uncollectible because of the primary insurer's insolvency).

■ The exclusionary clause contained in the Houston General policy states that "[s]uch insurance shall not attach with respect to any liability of the insured if there is *in force* a ... policy that would *cover* any part of such liability ..." (emphasis added).

In order to interpret this clause, it is helpful to note what the policy does not say. If the clause stated that "[s]uch insurance shall not attach ... if there is a ... policy that would *cover* any part of such liability," it is obvious that the Early American policy would be deemed to provide coverage, since whether or not a policy covers a loss does not hinge on an insurer's

solvency. *Mission Nat. Ins. Co.*, 792 F.2d at 553. However, we interpret the additional words "in force" to require that the Early American policy not merely cover Boudreaux's claim for Houston General to avoid liability, but also that the policy proceeds be available to Shannon before coverage by Houston General is precluded. In this regard, "in force" is synonymous with "collectible" or "recoverable." This construction allows us to harmonize all of the words of the exclusionary clause without rendering any of them meaningless. *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n.*, 783 F.2d 1234, 1238 (5th Cir.1986).

Other considerations support our interpretation. Unlike the *Continental Marble* and *Mission National* cases, we are not determining whether an excess insurer must "drop down" to provide coverage for the layer of risk that is normally covered by a primary insurer. In those cases, the premium paid to the excess insurer presumably did not reflect such an undertaking, the policy language did not indicate an intent to drop down to provide primary coverage, and there was an express or implied requirement that underlying limits be present and exhausted before the excess insurers liability was triggered. Here, Houston General is a primary insurer, and presumably the premium charged Shannon reflected the primary level risk insured against.

■ Houston General also argues that even if Early American's policy can not be considered "in force," the excess policy issued by Lloyds provided coverage for excess amounts and is thus "in force." This argument has no merit, since the Lloyds policy is not applicable to the primary level of insurance in dispute here.

■ Since the Early American policy is not "in force" due to insolvency, and the Lloyds policy is not applicable, the exclusionary clause in the Houston General policy endorsement is not triggered.[2] We must therefore look to "pro rata" insur-

---

**2.** This finding pretermits the issue raised by Boudreaux of whether there is a conflict between the terms of the exclusionary clause in the endorsement and the pro rata clause in the main policy.

ance clause in the main body of the Houston General policy in order to determine liability. This clause calls for a pro rata distribution of liability whenever another policy covers the loss. Consistent with our interpretation of the term "cover" in *Mission Nat. Ins. Co.*, 792 F.2d at 553, Early American's insolvency does not prevent its policy from "covering" Shannon's claim. Thus, Houston General can only be liable for a pro rated portion of it.

Finding the district court's grant of Houston General's summary judgment motion to be in error, we REVERSE and REMAND for proceedings consistent with this opinion.