AMBRO, Circuit Judge, concurring
For a maritime creditor an action in rem is a procedure for obtaining pre-judgment security and post-judgment enforcement. In the global shipping business the debtor's ship is typically the main asset on which a judgment-creditor can rely to collect from a defendant located perhaps on the other side of the world. A court can easier locate, bring within its jurisdiction, and arrest the ship than a defendant's other foreign assets.
It is no surprise then that maritime law supplies in rem liability against a ship, that is, permits an action naming the ship as though it were the defendant. As is relevant here, in the United States a ship can be liable in rem for cargo damage, the idea being that the ship impliedly ratified the shipping contract when the carrier loaded the cargo onboard. See Man Ferrostaal, Inc. v. M/V Akili , 704 F.3d 77, 83 (2d Cir. 2012) ; see also Pioneer Import Corp. v. Lafcomo , 49 F.Supp. 559, 561-62 (S.D.N.Y. 1943), aff'd , 138 F.2d 907 (2d Cir. 1943) ("A lien against the ship arises for damage to cargo caused by improper storage.").
The Carriage of Goods by Sea Act, or COGSA, assumes the availability of an action against the ship. Indeed, § 3 of COGSA is titled, "Responsibilities and Liabilities of Carrier and Ship. " (emphasis added). And under § 3(8), the parties to a contract for shipping goods by sea cannot agree to lessen or relieve the liability of the "carrier or the ship." However, an action in rem is only one way to impose liability on a ship. Although South Korean law does not allow in rem suits, Liberty Woods International concedes that equivalent security for in personam suits is available. As it chose not to pursue this avenue for relief, I agree with my colleagues that any lessening of the ship's liability is the fault of Liberty Woods, not the selection of a foreign forum.
If, however, a forum-selection clause were to operate such that a shipper could never enforce the selected forum's judgment against the value of the ship that carried the shipper's damaged goods, the clause would be unenforceable per COGSA § 3(8). See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer , 515 U.S. 528, 540, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995) ("[W]ere we persuaded that the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies, we would have little hesitation in condemning the agreement as against public policy." (internal quotations and ellipsis omitted) ). My concern is that, in another case, the common shipping industry practice of chartering and sub-chartering a ship risks placing it and its owner beyond the reach of the designated forum's in personam jurisdiction. Here, because sub-charterer SK Shipping Co. Ltd. operated the Ocean Quartz, the parties agree that its owner, Dalia Ship Holding S.A., bears no liability *134 for damage to Liberty Woods' cargo. This naturally leads to a question: if Dalia Ship Holding bears no liability, how could Liberty Woods attach Dalia Ship's property-that is, the Ocean Quartz-to enforce a judgment against someone else (i.e. , SK Shipping)?
As noted, the parties do not contest that Liberty Woods could have enforced a judgment obtained in South Korea against the Ocean Quartz's value. So there is no reason to question that proposition here. But I am not convinced it will hold in every case. It is easy to imagine a shipowner contending that a personal judgment against a sub-charterer several steps removed should not be enforceable against the owner's vessel. The use of so-called "bareboat" or "demise" charter agreements, in which a shipowner surrenders control of the vessel to the charterer (and ultimately any sub-charterer down the line) and disclaims carrier liability, heightens the concern. An owner can credibly "seek to use the bareboat charter as a shield against in personam liability." Backhus v. Transit Cas. Co. , 532 So.2d 447, 449 (La. Ct. App. 1988), aff'd , 549 So.2d 283 (La. 1989). If the sub-charterer has few assets or becomes insolvent, the shipper might be left high and dry without compensation for damage to its cargo.
A suit in rem provides a means of cutting through a web of sub-charter agreements to impose liability on the ship directly and vindicate § 3(8)'s command (and thereby protect shippers in the face of judgment-proof sub-charterers). Other jurisdictions may provide other procedural vehicles to deliver these protections (as apparently South Korea does). In my view, COGSA requires that a shipper have some means to assess liability for damaged goods against the value of the ship. Because Liberty Woods has not explained why it would be impossible to vindicate its rights in the designated forum, I agree with my colleagues that we must affirm the dismissal of its in rem action.