MISSION NATIONAL INSURANCE COMPANY, Plaintiff-Appellee,

v.

DUKE TRANSPORTATION COMPANY, INC., Defendant-Appellant.

DUKE TRANSPORTATION, INC., Plaintiff-Appellant,

v.

MISSION NATIONAL INSURANCE COMPANY, Defendant-Appellee.

No. 86–4138

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 25, 1986.

Colleen McDaniel, Lafayette, La., for defendant-appellant.

Montgomery, Barnett, Brown, Read, Hammond & Mintz, Wood Brown, III, New Orleans, La., for plaintiff-appellee.

Before GEE, REAVLEY, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

In this Louisiana diversity case, Duke Transportation Company (Duke) appeals from the district court's grant of a motion for summary judgment in favor of Mission National Insurance Company (Mission). The district court held that Mission, an excess insurance carrier, was not required to provide primary coverage to or to defend its insured, Duke, after the primary insurance carrier, Northwest Insurance Company (Northwest), became insolvent. Finding the district court's ruling entirely correct, we affirm.

I.

Neither party contests the facts of this case. Duke purchased primary insurance

coverage from Northwest for general liability, automobile, and worker's compensation claims. The Northwest policy provided for general liability coverage up to a maximum amount of $300,000 for an injury to one person. Duke also purchased umbrella or excess insurance coverage from Mission. The Mission policy provided for individual occurrence and aggregate annual maximum liability coverage in the amount of $5,000,000, subject to the following limitations:

> The Company shall only be liable for ultimate net loss the excess of either
>
> (a) the limits of the underlying insurance as set out in the attached schedule [$300,000] in respect of each occurrence *covered* by said underlying insurance, or
>
> (b) the amount as set out in item 2(c) of the Declarations [$10,000] ultimate net loss in respect of each occurrence *not covered* by said underlying insurance, (hereinafter called the "underlying limits"),
>
> and then only up to a further sum as stated in item 2(a) of the Declarations [$5,000,000] in all in respect of each occurrence—subject to a limit as stated in item 2(b) of the Declarations [$5,000,000] in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Insured.
>
> In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder, this policy subject to all the terms, conditions and definitions hereof shall
>
> (1) in the event of reduction pay the excess of the reduced underlying limit
>
> (2) in the event of exhaustion continue in force as underlying insurance.

(emphasis added). The Mission policy also contained the following limited obligation to defend:

> As respects occurrences *covered* under this policy, but *not covered* under the underlying insurances as set out in the attached schedule or under any other collectible insurance, the Company shall
>
> (a) defend in his name and behalf any suit against the Insured alleging liability insured under the provisions of this policy and seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as many be deemed expedient by the company.
>
> (b) pay all premiums on bonds to release attachments for an amount not in excess of the limit of liability of this policy, all premiums on appeal bonds required in any such defended suit but without any obligations to apply for or furnish such bonds, all costs taxed against the insured in any such suit, all expenses incurred by the Company and all interest accruing after the entry of judgment until the company has paid, tendered or deposited in court that part of such judgment as does not exceed the limit of the Company's liability thereon.
>
> (c) reimburse the Insured for all reasonable expenses, other than loss of earnings incurred at the Company's request

(emphasis added).

When it became apparent that due to insolvency Northwest would be unable to fulfill its obligations of primary coverage and defense and would be placed in liquidation, Duke requested that Mission provide Duke with primary coverage and defense for suits arising during the period covered by the Northwest policy. After Mission refused the request to provide primary coverage and to defend the pending suits, Duke brought a declaratory judgment action in Louisiana state court, requesting that the court require Mission to provide primary coverage and to defend Duke. Mission removed the case to federal

district court and also filed a declaratory judgment action asking the district court to declare that Mission owed no primary insurance coverage or duty to defend to Duke; the district court consolidated the two cases. On cross-motions for summary judgment the district court granted Mission's motion. The district court stated that:

Under the plain language of Mission's policy there is no obligation to pay for any loss which is within the limits of the Northwest policy, that is, until the loss exceeds $300,000. The occurrences involved in these cases were *covered* by the underlying insurance. Further reduction or exhaustion of the limits of the underlying insurance can only be accomplished under the terms of umbrella policy *by payment of losses under the underlying insurance and not by the insolvency of Northwest. See, Molina v. U.S. Fire Ins. Co.*, 574 F.2d 1176, 1178 (4th Cir.1978).

The provision of the insurance agreement containing Mission's obligation to defend provides that Mission shall defend every case not covered by the underlying coverage *or,* by other collectible insurance. Since it is undisputed that the claims involved herein were covered under the Northwest policy, there is no duty to defend by Mission.

(emphasis in original). This appeal followed.

## II.

### A.

█ Duke argues that the district court erred in its interpretation of the insurance contract. Duke reads the limitation of liability section as limiting Mission's liability to amounts over the primary coverage only when the primary coverage remains collectible. In the case where the primary insurer collapses, Duke reads the policy as providing "drop down" coverage, i.e., the excess insurer drops down and assumes the primary insurer's responsibilities.

Duke bases its argument on its interpretation of the words "covered" and "not

covered" in subsections (a) and (b) of the limitation of liability section of the Mission policy. Duke interprets "covered" to mean covered by the coverage terms of an underlying policy on which the insured can collect. Mission, and the district court, interpret "covered" to mean covered by an underlying policy without regard to whether the insured can collect from the primary insurer.

While our research has not uncovered, nor have the parties cited to us, any Louisiana cases or any other state's cases interpreting the words "covered" and "not covered," we are confident in predicting that a Louisiana court would hold that the use of the words "covered" and "not covered" in the Mission policy does not result in drop down coverage in favor of Duke. Recently, in a case arising out of the collapse of the same primary insurance carrier, we held that the following policy provision did not provide drop down coverage:

The company shall be liable only for ultimate net loss resulting from any one occurrence in excess of … if the insurance afforded by such underlying insurance is inapplicable to the occurrence, the amount stated in the declarations as the retained limit.

*Continental Marble & Granite v. Canal Insurance Co.*, 785 F.2d 1258, 1259 (5th Cir.1986) (construing Louisiana law). In *Continental Marble* the insured argued that the primary insurer's insolvency rendered the underlying insurance "inapplicable" and that, therefore, the excess liability policy dropped down to become the primary policy. We rejected the insured's contention. *Id.*

We believe the term "covered" provides at least as narrow, if not narrower, excess coverage than does the term "inapplicable." Just as the primary insurance coverage in *Continental Marble* remained applicable to the insured so to does the primary insurance coverage in the instant case cover the occurrences Duke claims that Mission should provide primary coverage for and defend Duke against. The terms of the Northwest policy specifically provide

coverage for all of the claims that Duke asserts Mission should provide primary coverage for and defend Duke against.

The cases from outside Louisiana also support this interpretation. The only cases where the courts have found that the excess insurer drops down involve policies where the excess insurer used the terms "inapplicable," "collectible," or "recoverable." *E.g. Reserve Insurance Co. v. Pisciotta,* 30 Cal.3d 800, 180 Cal.Rptr. 628, 640 P.2d 764, 772 (1982) ("recoverable"); *Gros v. Houston Fire & Casualty Insurance Co.,* 195 So.2d 674, 676 (La.Ct.App.1967) ("collectible"); *Macalco, Inc. v. Gulf Insurance Co.,* 550 S.W.2d 883, 896 (Mo.Ct. App.1977) ("inapplicable"). Of course, our ruling in *Continental Marble* establishes, at least until the Louisiana courts advise us otherwise, the interpretation to be given to the term "inapplicable." And the terms "collectible" and "recoverable" are clearly distinguishable from the term "covered." When an excess insurer uses the term "collectible" or "recoverable" it is agreeing to drop down in the event the primary coverage becomes uncollectible or unrecoverable; on the other hand, when an excess insurer uses the term "covered" or "not covered," it is agreeing to drop down only in the event that the terms of the underlying policy do not provide coverage for the occurrence or occurrences in question.

### B.

Duke also proffers as a reason for its contention that Mission should have to assume Northwest's obligation to provide primary coverage to and defend Duke that the limits of the underlying policy have been exhausted and that, therefore, under the terms of the Mission policy, Mission's policy continues in force as the underlying insurance. We disagree. The policy provides that: "In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder, this policy ... shall ... in the event of exhaustion continue in force as underlying insurance." Duke's argument ignores the phrase "by

reason of losses paid thereunder." Duke argues that the underlying policy is exhausted because Northwest is unable to pay any claims under the policy; however, the policy specifically provides that it functions as the underlying insurance only when the exhaustion occurs by reason of losses paid under the policy. Since Duke is not claiming exhaustion due to losses paid under the policy, its argument must fail. *See Molina v. United States Fire Insurance Co.,* 574 F.2d 1176, 1178 (4th Cir. 1978); *St. Vincent's Hospital & Medical Center v. Insurance Co. of North America,* 117 Misc.2d 665, 457 N.Y.S.2d 670, 672 (N.Y.Sup.Ct.1982).

### C.

Duke's last argument for its contention that Mission should have to assume Northwest's obligation to provide primary coverage to and defend Duke is based on the language of the policy in the section defining "ultimate net loss:"

Except as provided in insuring Agreement II, the term "Ultimate Net Loss" shall mean the total sum which the insured, or his *Underlying Insurers as scheduled,* or both, become obligated to pay by reason of personal injuries, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder.

The Company shall not be liable for expenses as aforesaid when such expenses are included in *other valid and collectible insurance.*

(emphasis added). Duke contends that, because the policy refers to "other valid and collectible insurance," there is an implication that any insurance which might apply

to limit Mission's liability must be collectible. Again, we must disagree. When the entire section is read in context, it is clear that the phrase "other valid and collectible insurance" refers to any insurance Duke carried in addition to the underlying insurance listed in the schedule contained in the Mission policy, i.e., the Northwest policy. The Mission policy clearly provides that Mission's liability is excess both to occurrences covered by the Northwest policy and to expenses included in any other valid and collectible insurance. Thus, the use of the term "collectible" in no way refers to the Northwest policy, and Duke's last argument is therefore without merit.

None of the arguments offered by Duke support its contention that Mission's excess liability policy drops down to become the primary policy. We therefore affirm the judgment of the district court.

AFFIRMED.