These appeals are from summary judgments in an insurance case involving a primary insolvent excess insurer and the effect that that insurer's insolvency has on a secondary excess liability insurer and on the obligations of the Alabama Insurance Guaranty Association. The trial court entered a summary judgment for Fireman's Fund Insurance Company, holding that Fireman's Fund was not required to "drop down" to meet the obligations of an insolvent excess insurer and entered a summary judgment for Kinder-Care, Inc., holding that the Alabama Insurance Guaranty Association was under a duty to pay $150,000 to Kinder-Care in light of the insolvency of the excess insurer. We affirm.
Kinder-Care, Inc., contracted with Maryland Casualty Company for primary insurance, with policy limits of $500,000. Thereafter, Kinder-Care also obtained excess coverage from Mission Insurance Company with a limit of $25,000,000, and a second layer of excess coverage from Fireman's Fund Insurance Company.
Following the settlement of a wrongful death suit against Kinder-Care for $1.7 million, Kinder-Care sought payments of the settlement amount from its insurers. Maryland Casualty paid its policy limits of $500,000; however, Mission Insurance Company was insolvent and could not meet its obligations. Fireman's Fund refused to cover Mission's insolvency. Thus, Kinder-Care paid the remaining $1.2 million and filed suit against Alabama Insurance Guaranty Association for $150,000, pursuant to § 27-42-12, Code of Alabama (1975), and against Fireman's Fund for the remainder of the settlement amount.
In order for us to determine Alabama Insurance Guaranty's obligation, we must first consider whether Fireman's Fund should be required to "drop down" and meet the obligations of the insolvent Mission Insurance Company.
Kinder-Care appeals the holding that its second excess insurer, Fireman's Fund, was not required to "drop down" and meet the $1,200,000 obligation of the insolvent Mission Insurance Company. The policy indicates that it was to "kick in" after the $25,000,000 in insurance issued by Mission had been exhausted. However, the policy does not address the consequences in the event of insolvency by one of the primary excess coverage insurers. In a recent case, Alabama InsuranceGuaranty Ass'n v. Magic City Trucking Service, Inc.,547 So.2d 849 (Ala. 1989), Justice Shores reaffirmed that "[c]ourts look to the language of the policy to determine whether the insurer must drop down and provide coverage in cases of insolvency of the primary insurer." Id. at 854. We are of the opinion that we must also look to the policy to determine if a secondary excess
insurer must drop down in cases where the primary excess
insurer is insolvent.
If the policy is ambiguous, we will construe it against the drafter, as we did in Alabama Insurance Guaranty Ass'n v. MagicCity Trucking Service, Inc., supra. *Page 288 
But if the policy is not ambiguous, we will simply follow the language of the policy. The policy, in pertinent part, reads as follows:
"2. Limit of Liability
 "The company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. . . . [P]rovided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. . . ."
(Emphasis added.) The coverage provision of the agreement states that the purpose of coverage is
 "[t]o indemnify the Insured for the insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or 'Umbrella' policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property including loss of use thereof."[1]
(Emphasis added.)
The maintenance conditions of the policy read, in pertinent part, as follows:
 "The insured warrants, and it is a condition of this policy, that at the inception of this policy, insurance afforded by the underlying policies of insurance (applying as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance stated in Item 4 of the declarations, or renewals or replacements thereof not including coverages other than those at inception of this policy, shall be maintained in full effect during the period of this policy, except for reduction of aggregate limits solely as a result of payment of claims arising out of occurrences during this policy period. If such underlying insurance is not maintained in full effect by the Insured or if there is any change in the scope of coverage under any underlying insurance, the insurance afforded by this policy shall apply in the same manner as though such underlying policies had been so maintained and unchanged."[2]
(Emphasis added.)
Unlike the policy involved in Alabama Insurance GuarantyAss'n v. Magic City Trucking Services, Inc., supra, the policy in the case at bar does not utilize the term "collectible or similar language in its underlying limit provision, [on the basis of which] courts have held that the insurer agrees to drop down in the event of the insolvency of the primary insurer." Id., at 854 (citations omitted). The Fireman's Fund policy in the case sub judice is similar to the policy inMission National Insurance Co. v. Duke Transportation Co.,792 F.2d 550 (5th Cir. 1986), cited by Alabama Insurance GuarantyAssociation, supra; in Mission National Insurance Co. the court held that the excess insurer was not required to drop down because the terms of the policy plainly stated that the excess insurance would not "kick in" until the loss exceeded $300,000 (the limits of the primary insurance policy). Mission NationalInsurance Co., 792 F.2d at 552.
In the present case, it is clear to us that the trial court was correct in holding as follows:
 "As a matter of law the language of the excess liability insurance contract between the Defendant, Fireman's Fund *Page 289 
Insurance Company, and the Plaintiff, Kinder-Care, Inc., is clear and unambiguous as to the obligations of the Defendant under the contract. Paragraph two of the 'Insuring Agreements' makes it abundantly clear that the Defendant is obligated to pay a claim only 'in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period.' This language cannot be reasonably interpreted to mean that the Defendant was contracting to insure the solvency of the underlying carrier, Mission Insurance Company, but rather the Defendant was agreeing to pay claims in excess of the amounts paid according to the limits of the underlying policy. . . ."
Therefore, we hold that the trial court correctly entered summary judgment for Fireman's Fund.
Having determined that Fireman's Fund is not required to drop down and meet the obligations of Mission, we must now address the issue whether Alabama Insurance Guaranty is obligated to Kinder-Care for $150,000 as a result of Mission's insolvency.
The trial court held that Alabama Insurance Guaranty was under a statutory duty to pay the statutory maximum of $150,000 to Kinder-Care in light of Mission's insolvency. Alabama Insurance Guaranty contends that the trial court erred in that ruling because, it argues, the $500,000 payment by Maryland Casualty reduced its obligation to zero, pursuant to §27-42-12(a), which states as follows:
 "(a) Any person having a claim against an insurer under any provision in an insurance policy (other than a policy of an insolvent insurer which is also a covered claim,) shall be required to exhaust first his rights under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under such insurance policy."
Alabama Insurance Guaranty contends that Kinder-Care received $500,000 from Maryland Casualty, thereby exhausting "other" insurance and necessitating an offset of the $150,000 allegedly owed by Alabama Insurance Guaranty. Alabama Insurance Guaranty, however, ignores the fact that Mission's insurance "kicked in" at $500,000, and that there was no overlap between Maryland Casualty's policy and Mission's policy. As illustrated by Kinder-Care, the obligation for the settlement could be divided as follows:
[EDITORS' NOTE: The Chart IS ELECTRONICALLY NON-TRANSFERRABLE.]
Thus, Mission's obligation began at the level of $500,000, and there was no "other" insurance for the amount over $500,000 that could be exhausted and that would, therefore, offset the $150,000 owed by Alabama Insurance Guaranty. In holding that Mission's coverage did not overlap Maryland Casualty's coverage, we agree with the ruling of the trial court that Alabama *Page 290 
Insurance Guaranty has a duty to pay Kinder-Care the statutory maximum of $150,000.
For the foregoing reasons, the judgments of the trial court are due to be, and they hereby are, affirmed.
AFFIRMED.
MADDOX, ALMON, SHORES and STEAGALL, JJ., concur.
[1] "Ultimate net loss" is defined as "all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage." The "umbrella" policy specified in Item 7 of the declarations is that a Mission Insurance Company.
[2] The limit noted in Item 4 of the declaration is $25,000,000.