INSURANCE COMPANY OF
NORTH AMERICA

v.

WEST OF ENGLAND SHIPOWNERS
MUTUAL INSURANCE
ASSOCIATION.

Civ. A. No. 93–076.

United States District Court,
E.D. Louisiana.

July 13, 1995.

Peter L. Hilbert, Jr. and Darnell Bludworth, McGlinchey, Stafford & Lang, New Orleans, LA, for Ins. Co. of North America.

George W. Renaudin and George H. Lugrin, IV, Griggs & Harrison, Houston, TX, for Griggs & Harrison.

George Moore Gilly and Stephanie G. McShane, Phelps Dunbar, New Orleans, LA, for West of England Shipowners Mut. Ins. Ass'n (Luxenberg).

Joseph J. Weigand, Jr., Joseph J. Weigand, Jr., A.P.L.C., Houma, LA, for Best Workover Inc., Gantry Well Service, Inc., Best Oilfield Services, Inc., and Workover 300 Inc., Best Workover Inc., Gantry Well Service, Inc., Best Oilfield Services, Inc., Workover 300 Inc., Darrell Brewer, Houma, LA, pro se.

David F. Bienvenu, James R. Sutterfield, and Renee Summer Melchiode, Hoffman, Sutterfield, Ensenat & Bankston, New Orleans, LA, for Institute of London Underwriters Companies.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

VANCE, District Judge.

This matter is before the Court on a motion for summary judgment filed by third-party defendants the 1990–1991 First Layer Umbrella Insurers and the 1991–1992 First Layer Umbrella Insurers (collectively "Umbrella Insurers"). The motion is granted for the reasons that follow.

## I. BACKGROUND

West of England Shipowners Mutual Insurance Association ("West of England") provided protection and indemnity ("P & I") insurance to Best Workover, Inc., Gantry Well Service, Inc., Best Oilfield Services, Inc. and/or Workover 300, Inc. (collectively "the Best entities") for the Barge REBSTOCK NO. 3. In accordance with the insurance contract, West of England expended defense and settlement costs of approximately $600,000 on behalf of the Best entities with respect to claims filed by injured crewmembers of the Barge REBSTOCK NO. 3. By third-party complaint, West of England seeks reimbursement of this amount from the Umbrella Insurers. West of England's third-party claim asserts that the P & I policy is void *ab initio* because the Best entities made material misrepresentations in the placement and renewal of coverage. The Umbrella Insurers have filed this motion for summary judgment dismissing West of England's claims against them based on their assertion that the umbrella policies provided by them to the Best entities were excess insurance policies, which arose only upon the exhaustion of primary insurance. Since West of England does not seek to recover amounts it paid in excess of its $1,000,000 P & I policy, Umbrella Insurers deny liability.

## II. ANALYSIS

■ Although federal maritime law generally controls the interpretation of marine insurance contracts, the law of the state where the contract was issued and delivered is applied if there is no federal law governing the question presented. *Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 894 (5th Cir.1994). Since there is no controlling federal precedent regarding the interpretation of umbrella liability policies, and the policies were issued and delivered in Louisiana, Louisiana law governs the interpretation of the umbrella policies in this case.

West of England does not contend that any of the amounts it seeks to recover from Umbrella Insurers are in excess of the $1,000,000 limits of the primary policies. Rather, West of England claims that Umbrella Insurers are liable for amounts West of England expended since West of England's P & I policy was, in essence, nonexistent because of the assured's material misrepresentations. West of England argues that when underlying insurance policies do not exist, the umbrella policies "drop down" to fill the coverage gaps. West of England Opposition at 3.

■ "Drop-down" coverage exists when an insurance carrier of a higher level of coverage is obligated to provide coverage that the carrier of the underlying level of insurance coverage has agreed to provide. *Louisiana Ins. Guaranty v. Interstate Fire*, 630 So.2d 759, 760 (La.1994). In determining whether an umbrella policy provides drop-down insurance coverage, the language of the umbrella policy controls. The Louisiana Supreme Court has considered the distinction between policy language that creates drop-down coverage and language that does not. *Kelly v. Weil*, 563 So.2d 221 (La.1990). If the excess or umbrella policy provides coverage in excess of "the amount *recoverable* under the underlying insurance," the policy will drop down to fill coverage gaps when the insured cannot collect from the primary insurer. *Id.* at 222. On the other hand, policies that provide coverage for claims in "excess of the limits of the policies 'covered' in the schedules attached to the policy," do not provide drop-down coverage. *Id.*

■ The Umbrella Insurers' policies contain language indicating that the coverage provided was not intended to drop down. Most significantly, the policies provide:

II. LIMIT OF LIABILITY

Regardless of the number of claims made against any or all of the Assured, Underwriters hereon shall only be liable for the Ultimate Net Loss in excess of either:

a) the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances, or

b) the self insured retention as scheduled Ultimate Net Loss in respect of each occurrence not covered by said underlying insurances.

Ex. A to Umbrella Insurers' Motion, Excess Liability Endorsement October 2, 1986

(Amended). Because the provision does not premise coverage on whether claims are *recoverable* or collectible under the primary policy, but rather on whether the claim falls within the terms of coverage of the primary policy, the language does not give rise to drop-down coverage.

West of England argues that the foregoing language should be construed to provide drop-down coverage because section II(b) of the umbrella policies provides coverage in excess of the self-insured retention for occurrences "not covered by" underlying insurance. West of England argues that since its policy is void *ab initio,* the claims for which it seeks reimbursement were "not covered by" underlying insurance.

The Fifth Circuit considered an excess insurance policy with limitation of liability language similar to that of the Umbrella Insurers' policies in *Mission National Ins. Co. v. Duke Transportation Co., Inc.,* 792 F.2d 550 (5th Cir.1986). The policy at issue in *Mission National* stated that the excess insurer would be liable only for:

> the ultimate net loss in excess of either: (a) the limits of the underlying insurance as set out in the attached schedule [\$300,-000] in respect of each occurrence *covered* by said underlying insurance; or (b) the amount as set forth in item 2(c) of the Declarations [\$10,000 retention] ultimate net loss in respect of each occurrence *not covered by* said underlying insurance.

*Id.* at 551 (emphasis in original).

The insured in *Mission National* argued that the excess policy dropped down when the primary insurer became insolvent because, based on the insolvency, the insured's claims were "not covered by" underlying insurance. The Fifth Circuit disagreed stating, "[A] Louisiana court would hold that the use of the words 'covered' and 'not covered' in the Mission policy does not result in drop down coverage in favor of Duke." *Id.* at 552. The court affirmed the trial court's interpretation that "covered" means "covered by an underlying policy without regard to whether the insured can collect from the primary insurer." *Id.*

It is true that West of England's assertion that the policy is void *ab initio* differs from uncollectability because of the subsequent insolvency of the primary insurer. However, here the *terms* of the West of England policy provided primary coverage for these types of claims; West of England's contention is that the coverage was voided and rendered uncollectible by virtue of the assured's misrepresentations as to the number of crewmembers on the vessel. The situation is sufficiently analogous to that involved in *Mission National* to warrant application of its reasoning. Indeed, the Fifth Circuit stated there that "when an excess insurer uses the term 'covered' and 'not covered,' it is agreeing to drop down only in the event that the *terms* of the underlying policy do not provide coverage for the occurrence or occurrences in question." *Id.* at 552 (emphasis added). Moreover, it would certainly be contrary to an excess insurer's reasonable expectations to hold it liable as a primary carrier when the primary insurance on which it relied as providing coverage of a certain amount on certain types of risks is claimed after the fact to be nonexistent. Accordingly, the Court finds that the language of the policies' "Limit of Liability" provision does not provide drop-down coverage.

■ The umbrella policies contain the following additional language that prevents drop-down coverage:

(T) MAINTENANCE OF AND RESTRICTIONS OF UNDERLYING INSURANCES.

> It is a condition of this policy that the policy or policies referred to in the attached "Schedule of Underlying Insurances" shall be maintained in full effect during the policy period without reduction of coverage or limits except for any reduction in the aggregate limit or limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this policy. Failure of the Named Assured to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the underwriters shall only be liable to the same extent as they would have been had the named assured complied with said condition.

Ex. A to Umbrella Insurers' Motion, Umbrella Policies. This provision clearly indicates that the Umbrella Insurers provided no coverage below the $1,000,000 P & I insurance cap, regardless of the maintenance of underlying policy. West of England argues that this provision is inapplicable since the Best entities paid all their P & I premiums and, therefore, did not fail to *maintain* the P & I policies. West of England's argument is strained and unpersuasive. If Best made material misrepresentations that invalidated the P & I policy, this would be a failure by the Best entities to maintain coverage. In any case, the quoted provision evidences the Umbrella Insurers' clear intent not to extend coverage below the limits of the underlying insurance.

█ Finally, Umbrella Insurers rely on a policy exclusion applicable to employee claims under the Jones Act or the general maritime law to defeat coverage for the types of claims involved here. Ex. A to Umbrella Insurers' Motion. West of England, on the other hand, contends that an endorsement entitled "MEL Buyback Endorsement—'Occurrence' 1.10.86 ('Broad')," which states that the umbrella policies are endorsed to indemnify the assured for its responsibilities as employer under the Jones Act or general maritime law, evidences the Umbrella Insurers' intent to provide coverage for the claims at issue in this litigation. West of England Opposition at 7; Ex. C to West of England's Opposition. Regardless of whether the endorsement affords coverage for Jones Act or general maritime law liabilities, the endorsement does not change the excess nature of the coverage. The endorsement for coverage of Jones Act and general maritime law claims clearly limits such coverage to "amounts for which the Assured shall have become liable to pay and shall have paid *in excess of Scheduled underlying insurances.*" *Id.* (emphasis added). The MEL Buyback endorsement is not inconsistent with the language of the policy on the issue of drop-down coverage. Therefore, the Court finds no material issue of fact concerning the liability of umbrella insurers for amounts not in excess of the underlying insurance coverage. Accordingly,

IT IS ORDERED that the motion for summary judgment of the 1990–1991 and 1991–1992 First Layer Umbrella Insurers is GRANTED.