United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 5, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

————————————————

No. 05-10929

————————————————

SCOTTSDALE INSURANCE CO,

Plaintiff-Appellant,

versus

KNOX PARK CONSTRUCTION INC; ET AL,

Defendants,

KNOX PARK CONSTRUCTION INC, formerly known as
City Homebuilders Construction Inc

Defendant-Appellant,

versus

LANDMARK INSURANCE COMPANY,

Defendant-Appellee.

————————————————————————————

Appeal from the United States District Court
for the Northern District of Texas

————————————————————————————

Before GARWOOD, WIENER*, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

In this declaratory judgment action, the district court granted two motions for summary

judgment by Landmark Insurance Co. ("Landmark") and denied a cross-motion by Scottsdale

Insurance Co. ("Scottsdale"). The court concluded that Landmark did not owe a duty to defend and

———————————

*Judge Wiener concurs in the judgment only.

1

was not obligated to cover breach of warranty claims brought in an underlying suit against Shade Tree Electric, Inc. ("Shade Tree"), which was the insured of both Scottsdale and Landmark. Knox Park Construction Co. ("Knox Park"), who had asserted the breach of warranty claims, had joined Scottsdale's cross-motion concerning the coverage issue. Scottsdale and Knox Park appeal. We dismiss the appeal of Knox Park, and as to the appeal of Scottsdale, we affirm in part and reverse in part.

## I. FACTS AND PROCEEDINGS

In an underlying state court action, Knox Park sued Shade Tree after identifying construction defects in work performed by Shade Tree for Knox Park. Knox Park asserted, *inter alia*, negligence, breach of warranty, and breach of contract causes of action. In September 2001, Scottsdale sought a declaratory judgment in federal court regarding its duties to defend and/or indemnify its insured, Shade Tree,[1] in the underlying dispute. Scottsdale was Shade Tree's primary insurer, and Knox Park and Shade Tree were the original named defendants in the declaratory judgment action.

In December 2002, Scottsdale filed an amended complaint in the declaratory judgment action, adding Landmark, another of Shade Tree's insurers, as a defendant. The initial and amended federal complaints together asserted that Landmark owed an obligation to defend and indemnify Shade Tree and that Scottsdale did not. In the federal action, Knox Park never filed a cross-claim against its co-defendant Landmark.

Landmark moved for partial summary judgment, arguing that Scottsdale, and not Landmark, owed a duty to defend Shade Tree in the underlying state court suit. The district court granted

---

[1]Shade Tree has multiple d/b/a aliases that include "Ace Electric & Plumbing" and "Ace Electric & Plumbing HVAC."

Landmark's motion and later administratively closed the case pending the resolution of the case in state court. Scottsdale, Shade Tree, and Knox Park later settled the state court action for $535,000. The settlement agreement provided that Scottsdale would pay $535,000 to Knox Park. In exchange, Knox Park released Shade Tree and Scottsdale from all liability. Landmark was not a party to the agreement and, consequently, received no favors from the parties to it. Knox Park reserved the right to recover the difference between $535,000 and $1.2 million from Landmark alone. Scottsdale reserved its right to recoup part of the $535,000 in settlement funds from Landmark in the federal action.

Following the settlement, the district court re-opened the federal action, and Landmark filed a second motion for summary judgment, arguing that (1) Scottsdale had not shown an "ultimate defined loss" in excess of the Scottsdale policy's limit that would trigger coverage under the Landmark policy; (2) Scottsdale had not complied with all conditions precedent to recovery in the Landmark policy; and (3) Scottsdale had not shown that Shade Tree was the insured in the Landmark policy. Scottsdale opposed and filed a cross-motion for summary judgment against Landmark; Knox Park purported to join the cross-motion, though it had never filed a claim against Landmark.

Reaching only the first of Landmark's arguments, the district court found that Scottsdale had failed to demonstrate an "ultimate net loss" in excess of the limit reserved to the Scottsdale policy and granted summary judgment in favor of Landmark.

## II. STANDARD OF REVIEW

Questions of standing are reviewed de novo. *Maiz v. Virani*, 311 F.3d 334, 338 (5th Cir. 2002). The district court's grant of summary judgment is also reviewed de novo. *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 464 (5th Cir. 2006). Summary judgment is proper if "there is no

3

genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). The parties do not dispute that Texas law applies to this diversity case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### III. DISCUSSION

Three issues are raised by the parties: (1) Landmark argues that Knox Park does not have standing to appeal; (2) Scottsdale and Knox Park assert that the district court's grant of summary judgment on the coverage issue was erroneous; and (3) Scottsdale alone argues that the district court's grant of summary judgment on the duty to defend issue was in error.

### A.     Standing

Whether a party has standing to appeal involves the question of justiciability, namely, "whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Article III." *Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208 (5th Cir. 1994). "Merely because a party appears in the district court proceedings does not mean that the party automatically has standing to appeal the judgment rendered by that court." *Id.* There must be "some threatened or actual injury resulting from the putatively illegal action," *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (internal quotation omitted), and a litigant may not merely "champion the rights of another," *Ortiz Bros.*, 32 F.3d at 208. Regarding the injury required, "[a]n indirect financial stake in another party's claims is insufficient to create standing on appeal." *Id.* (alteration in original) (internal quotation omitted). "[T]he injury or threat of injury must be both real and immediate[,] not conjectural or hypothetical." *Id.* (internal quotation omitted).

We agree with Landmark that Knox Park has no standing to appeal. Knox Park has never filed a cross-claim against Landmark. Instead, Knox Park joined Scottsdale's motion for summary

4

judgment on Scottsdale's claim that sought to establish that the Landmark policy covers breach of warranty damages and, consequently, that Landmark must indemnify Scottsdale for the amount Scottsdale paid to Knox Park for such damages. Knox Park, however, cannot champion a claim brought by Scottsdale. *Id.* at 208 & n.9. Knox Park does not gain anything if Scottsdale prevails and wins indemnity from Landmark because Knox Park has released Scottsdale from liability.

Without a claim of its own in the federal litigation, Knox Park has only an "indirect financial stake" in the resolution of the coverage dispute through its ability to litigate its claims in the future. *Id.* at 208 (internal quotation omitted). The district court's judgment concerned whether the Landmark policy covered breach of warranty damages caused by the insured. Because Knox Park is neither the insured nor an insurer in this dispute, a determination that the Landmark policy covers breach of warranty damages does not automatically result in a recovery by Knox Park of the damages that it preserved in the state court settlement agreement and now seeks on appeal. Without a claim, Knox Park can only posit that a favorable coverage ruling here is likely to later result in its recovery of damages from Landmark after a settlement or further litigation.

Knox Park raises some arguments in support of standing, all of which are meritless. Knox Park contends that a holding that it has no standing could result in conflicting judgments, speculating that if it is dismissed and this court holds that the Landmark policy does not cover breach of warranty damages, a subsequent suit between Knox Park and Landmark could end with a contrary result. A potential for conflicting results, however, does not confer standing without a direct, real, and immediate injury. *See id.* The test for standing focuses on "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court

jurisdiction," *Warth*, 422 U.S. at 498 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)), not on whether the result may possibly conflict with that in a hypothetical future lawsuit.

Knox Park also argues that its failure to file a claim against Landmark is not fatal because the Federal Rules render cross-claims permissive and because it does not need its own claim, since Scottsdale's complaint sought declarations regarding all parties' rights and duties. Knox Park is correct that cross-claims are permissive, but their permissiveness speaks not to whether relief can be granted when there is no claim filed but to whether those claims can be brought in subsequent litigation. *See Dunn v. Sears, Roebuck & Co.*, 645 F.2d 511, 512 n.1 (5th Cir. 1981) ("[C]ross claims are permissive rather than compulsory[,] and a party to an action has the option to pursue [them] in an independent action.").

Knox Park's argument that it has standing based on Scottsdale's request for declarations of all parties' rights and duties is also flawed. Declaratory judgment does not exist to allow courts to decide rights between two co-defendants when they have not sought to have their rights declared. The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party *seeking such declaration*, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Similarly, summary judgment is available only for parties who have filed a claim. *See* Fᴇᴅ. R. Cɪv. P. 56(a) ("A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may . . . move with or without supporting affidavits for a summary judgment . . . ."). Knox Park and Landmark did not formally seek to have their rights vis-à-vis one another determined by the district court. Knox Park's appeal is dismissed.

**B. Coverage**

6

The resolution of this issue depends entirely on language in the policies. The district court granted Landmark's motion for summary judgment and denied Scottsdale and Knox Park's motion for summary judgment on the issue of whether the Landmark policy covered any of Knox Park's claims against Shade Tree. The court found that Scottsdale presented no evidence of a loss that would trigger the Landmark policy, which the district court found to exist for damages caused by the insured that exceeded $1,000,000. Scottsdale challenges this ruling, contending that the breach of warranty damages were covered by the Landmark policy and not the Scottsdale policy. Landmark is therefore required, according to Scottsdale, to indemnify it for the portion of the $535,000 paid to Knox Park that represents payments for breach of warranty damages.

**(1)      Landmark's subrogation arguments**

Landmark argues that Scottsdale's right to indemnification is based on Scottsdale's contractual subrogation to the rights of its insured, Shade Tree, and that the settlement agreement released Shade Tree from liability, thus extinguishing any subrogation rights.

Landmark's argument is unavailing, however, because even assuming Scottsdale had no contractual right of subrogation on the basis of a release of liability in favor of Shade Tree, it can equitably subrogate to the rights of Shade Tree to enforce the Landmark policy. *See Employers Cas. Co. v. Transport Ins. Co.*, 444 S.W.2d 606, 610 (Tex. 1969) (noting that if the policy in question did not allow contractual subrogation, equitable subrogation applies). "The doctrine of subrogation is given a liberal application, and is broad enough to include every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter." *Liberty Mut. Ins. Co. v. Gen. Ins. Corp.*, 517 S.W.2d 791, 797 (Tex. App. 1974) (internal quotation omitted); *see also Am. Indem. Lloyds v.*

7

*Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 435 (5th Cir. 2003) (noting that when two primary insurers of the same insured settle a claim and one insurer pays "more than its share," the other insurer is entitled to recover the excess paid). If the Landmark policy covers the breach of warranty claims, Scottsdale is entitled to recover, since Scottsdale paid the debt on those claims.

**(2)     The Landmark policy**

Two types of insurance policies are at issue: the Scottsdale primary policy and the Landmark policy, which is labeled an umbrella policy. Umbrella policies can provide horizontal coverage, even though the policy limits of the primary policy have not been exhausted, in situations where the primary policy does not cover claims that are covered by the umbrella policy. *See, e.g.*, *Mission Nat'l Ins. Co. v. Duke Transp. Co.*, 792 F.2d 550, 552 (5th Cir. 1986) (applying Louisiana law).

The relevant portion of the Landmark policy provides:

We will pay those sums the insured becomes legally obligated to pay for "ultimate net loss"[2] in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. . . .

"Retained limit" means the greater of:
a.       The sum of amounts applicable to any "claim" or "suit" from:
         (1) "Underlying insurance", whether such "underlying insurance" is collectible or not; and
         (2) Other collectible primary insurance; or
b.       The "self-insured retention". . . .[3]

"Underlying insurance": means the *coverage(s) afforded* under [designated] insurance policies . . . .

_____

[2]"Ultimate net loss" is defined as "the total amount of damages for which the insured is legally liable in payment of 'bodily injury', 'property damage' or 'advertising injury.'"

[3]There is no "[o]ther collectible primary insurance," and the "self-insured retention" is not applicable, since it is less than the amount from "underlying insurance."

(emphasis added). The parties do not dispute the district court's conclusion that the Scottsdale policy is the only designated policy referred to in the definition of "underlying insurance."

The coverage issue turns on (1) whether "coverage(s) afforded" means insurance coverage provided, and not excluded, by the Scottsdale policy for particular categories of liability, or (2) whether, taking into consideration the "underlying insurance" definition's reference to "coverage(s) afforded," the Landmark policy is not triggered until the total amount of coverage afforded by the Scottsdale policy for claims in all categories is exhausted.

Scottsdale asserts that the district court erred by not specifically considering the definition of "underlying insurance," which is "*coverage(s) afforded*" by the Scottsdale policy. Because "[r]etained limit" is defined with reference to "underlying insurance" and the Landmark policy provides coverage for damages in excess of the retained limit, Scottsdale argues, the Landmark policy provides horizontal coverage when the Scottsdale policy provides no coverage for a given type of claim. Per Scottsdale's view, "coverage(s) afforded" means the insurance provided, and not excluded, by the Scottsdale policy.

The contrary reading of the phrase "coverage(s) afforded" in the definition of "underlying insurance" is one in which "coverage(s) afforded" means the total monetary coverage, *i.e.*, policy limit, afforded by the "underlying insurance," notwithstanding any coverage exclusions. Thus, the Landmark policy, as the district court found, would only provide coverage when the total damages (both covered or not covered by the Scottsdale policy) exceeded the Scottsdale policy limit of $1,000,000.

The latter reading of the policy is faulty. It confuses the concepts of liability limits and coverage limits, which are distinct. *Wells v. Gulf Ins. Co.*, No. 06-40911, — F.3d —, 2007 WL

9

1002137, at \*3 (5th Cir. Apr. 4, 2007). Insurance policies, moreover, "are strictly construed against the insurer in order to avoid exclusion of coverage," *see Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984), and Landmark drafted the policy.

Interpreting "underlying insurance" to mean the insurance coverage provided and not excluded properly gives meaning to the words "coverage(s) afforded" and resolves any uncertainty about the policy's language in favor of coverage.[4] Also, the Landmark policy excludes from its coverage situations in which the primary insurance becomes uncollectible, due to, *inter alia*, insolvency. It defines "retained limit" with reference to "'[u]nderlying insurance,' whether such 'underlying insurance' is collectible or not." Applicability, collectibility, recoverability, and coverage are concepts used to define the scope of horizontal coverage. *See Duke Transp. Co.*, 792 F.2d at 552–53. Landmark only specified non-collectible underlying insurance. It could have added language like "whether covered or not" but did not do so.

We hold that the district court erred in granting summary judgment in favor of Landmark on the issue of whether the Landmark policy provided coverage for breach of warranty damages when "retained limit" was defined as "*coverage(s) afforded*" by the "underlying insurance." That leaves the issue of whether the Scottsdale policy covers the breach of warranty claims at issue. If it does not, the Landmark policy covers horizontally.

**(3)      The Scottsdale policy**

---

[4]Under Texas law, when a policy is susceptible to more than one reasonable interpretation, courts must resolve the uncertainty by adopting the construction that favors coverage. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). Assuming both interpretations are plausible, Scottsdale's interpretation that the Landmark policy provides horizontal coverage should prevail.

Scottsdale contends that the Scottsdale policy and the Landmark policy differ in one important respect that requires a holding that the former does not cover breach of warranty damages and the latter does. That difference is in the policies' exclusions on "property damage." Scottsdale's argument is that the Scottsdale policy's "property damage" exclusion is broader than the corresponding exclusion in the Landmark policy because of the policies' respective definitions of "your work," a term that forms part of both policies' property damage exclusions. The Scottsdale policy's definition of "your work" includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" Landmark does not argue this point; thus it concedes that the Scottsdale policy excludes damages arising from such warranties.

The Landmark policy's definition of "your work" applicable to the property damage exclusion *does not* include warranties and representations, and therefore the Landmark policy does not exclude damage from such acts. Since the damages at issue are breach of warranty damages, the Landmark policy covers.

**(4)     Landmark's alternate bases to affirm**

The Landmark policy requires, as a condition precedent to liability, that the "ultimate net loss" be finally determined by actual trial or by "written agreement of the insured, the claimant or the claimant's legal representative and us [Landmark]" (hereinafter, "Consent Clause"). Landmark argues that Scottsdale did not satisfy the Consent Clause because there was no trial in the underlying suit and Scottsdale did not obtain any consent to the settlement agreement.[5] Landmark is correct that there

---

[5]Landmark also argues that the insured on the Landmark policy was different from the insured on the Scottsdale policy. This contention is based on the fact that Shade Tree had multiple d/b/a aliases, one of which was the Scottsdale insured and a separate one of which was the Landmark insured. This argument does not require a holding that Shade Tree is not a Landmark insured since a slight variation of an assumed name does not prevent coverage when the true identity behind the

was no trial and, though Landmark demanded settlement within the Scottsdale policy's limits, it was not a party to the state court agreement and did not consent to the settlement.

Nonetheless, Landmark waived its right to deny coverage on the basis of the Consent Clause pursuant to the rule in *Gulf Insurance Co. v. Parker Products, Inc.*, 498 S.W.2d 676, 679 (Tex. 1973). Under *Gulf Insurance*, an insurer can require an insured to comply with a consent clause "for its own protection, but it may not do so after it is given the opportunity to defend the suit or to agree to the settlement and refuses to do either on the erroneous ground that it has no responsibility under the policy." *Id.* The policy behind the waiver of consent clauses is as follows:

> The rationale behind holding to this particular waiver theory is that a claimant should not be required to approach his insurer, hat in hand, and request consent to settle with another when he has already been told in essence, that the insurer is not concerned, and he is to go his way. It is difficult to see why an insurer should be allowed, on the one hand, to deny liability and thus, in the eyes of the insured breach his contract and, at the same time, on the other hand, be allowed to insist that the insured honor all his contractual commitments. . . . [I]n the case of existent, denied liability the denial is a breach of contract on the part of the insurer and its breach should[,] by rights, relieve the insured of the punitive effects of his failure to comply with consent provisions of the insurance policy.

*Ford v. State Farm Mut. Auto. Ins. Co.*, 550 S.W.2d 663, 666 (Tex. 1977) (ellipses in original and internal quotation omitted). Given that Landmark demanded settlement within the Scottsdale policy's limit and did not provide coverage below that limit, Landmark's refusal to cover was motivated by its erroneous view that coverage existed only for liability in excess of $1,000,000. Also, Landmark had an opportunity to agree to a settlement since it demanded one. Landmark cannot invoke the

---

assumed names is the same. *See Scottsdale Ins. Co. v. Sessions*, 331 F. Supp. 2d 479, 486 (N.D. Tex. 2003), *aff'd*, *Scottsdale Ins. Co. v. Williams*, 108 F. App'x 909 (5th Cir. 2004); *see also Dillard v. Smith*, 205 S.W.2d 366, 367–68 (Tex. 1947) (holding that, under Texas law, a person doing business under an assumed name can be sued under the assumed name, his natural name, or both).

12

Consent Clause while simultaneously refusing to cover breach of warranty damages. *See Gulf Ins.*, 498 S.W.2d at 679; *see also Ford*, 550 S.W.2d at 666.

**C.      Landmark's duty to defend**

The district court granted summary judgment in favor of Landmark on Scottsdale's claim that Landmark owed a duty to defend Shade Tree. The district court found that Scottsdale had a duty to defend Shade Tree because at least some of Knox Park's claims were not excluded by the Scottsdale policy.

The district court found that the Landmark policy did not confer a duty to defend because its terms limited the duty to situations where the "underlying insurance" is exhausted. Scottsdale challenges this finding, contending that Landmark owes Scottsdale a pro rata portion of the attorneys fees Scottsdale expended defending Shade Tree on the breach of warranty claims, since those claims were covered by the Landmark policy.        The Landmark policy provides:

> We have a duty to defend the insured [Shade Tree] against any "suits" to which this insurance applies:
> (a)      But which are not covered by any "underlying insurance" shown in the Declarations or by any other applicable primary policies that may apply; or
> (b)      If the applicable limit of "underlying insurance" is exhausted.

As noted above, the definition of "underlying insurance" specifically refers to the Scottsdale policy, and the parties agree that the definition refers to no other policies.

Scottsdale seizes on the Landmark policy's acknowledgment of a duty to defend under (a) *or* (b) and argues that the district court's conclusion based on (b)—no exhaustion of the "underlying insurance" policy's limits—ignores the possibility of a duty to defend under (a). Scottsdale contends that subsection (a) of the Landmark policy provides a duty to defend in situations, such as the one

13

here, where the primary policy does not provide coverage for particular claims. It does not argue that subsection (b) confers a duty to defend.

Scottsdale's argument is flawed. At least some of the claims in the state court suit were covered by the Scottsdale policy. As such, Scottsdale had a duty to defend the entire suit. *See, e.g.*, *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1492 (5th Cir. 1992) ("If any allegation in the complaint is even potentially covered by the policy then the insurer has a duty to defend its insured."). Under the plain terms of subsection (a) in the Landmark policy, Landmark has no duty to defend when a *suit* is covered by "any 'underlying insurance.'" Because the Scottsdale policy covers the state court suit, the Landmark policy provides that Landmark has no duty to defend Shade Tree. This is so even though, as discussed *supra*, the Landmark policy covers breach of warranty claims that the Scottsdale policy excludes from coverage, since the duty to defend in the Landmark policy is determined on a per suit, rather than a per claim, basis.[6]

## IV. CONCLUSION

We DISMISS Knox Park's appeal for lack of standing. We AFFIRM the district court's judgment that concluded Landmark had no duty to defend Shade Tree, we REVERSE the judgment that concluded the Landmark policy did not cover breach of warranty damages, and we REMAND for proceedings not inconsistent with this opinion.

---

[6]The cases cited by Scottsdale that allocate attorneys fees among insurers are inapposite. In *Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 585–86 (5th Cir. 1986), the court split attorneys fees between two insurers, but, unlike here, the insurance policies conferred on *both* insurers a duty to defend. In *Hardware Dealers Mutual Fire Insurance Co. v. Farmers Insurance Exchange*, 444 S.W.2d 583, 590 (Tex. 1969), both insurers' policies entirely covered the insured without the distinction here that one policy covered certain claims and another covered different claims.

14

GARWOOD, Circuit Judge, concurring in part and dissenting in part.

I join in all of Judge Clement's well considered opinion except as follows.

I disagree that Landmark's demand that Scottsdale accept a settlement within Scottsdale's policy limits constituted a denial of coverage on Landmark's part or a waiver of its rights under the actual trial or approved settlement clause of its policy. And, the fact that Landmark had the opportunity to agree to a settlement but declined to does not, of itself, mean anything more than that it exercised the rights its policy gave it.

However, in my opinion Landmark had a duty to defend Shade Tree against Knox Park's suit in which Knox Park made breach of warranty claims against Shade Tree. Landmark's policy provided the primary, and the only, liability or indemnity coverage for such claims. In my view, a reasonable construction of the Landmark policy is that, for this purpose, the Knox Park suit was not "covered by" the Scottsdale policy because although that policy covered *some* of the claims in the suit it did not cover the breach of warranty claims, which *only* the Landmark policy covered. While a contrary construction of the Landmark policy is *also* reasonable, we are to adopt that reasonable construction which favors the insured and comports with the settled Texas rule that where primary liability coverage is concerned there is no duty to indemnify absent a duty to defend. Landmark refused to perform and repudiated its duty to defend Shade Tree and for *that* reason waived its rights under the actual trial or approved settlement clause of its policy. *See, e.g., Gulf Ins. Co. v. Parker Products*, 498 S.W.2d 676, 679 (Tex. 1973).

15